**Patrick John LINDEN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**Daniel James QUINN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**Nos. 3776, 3826.**

Supreme Court of Alaska.

Aug. 24, 1979.

---

Saul R. Friedman, Rice, Hoppner, Hedland, Fleischer & Ingraham, Anchorage, for Linden.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for Quinn.

Thomas W. Wardell, Dist. Atty., Kenai, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

These criminal appeals have been consolidated because of the presence of several issues which are the same in each appeal. Appellants were convicted after jury trial of burglary not in a dwelling contrary to AS 11.20.100.

In the early morning of December 9, 1976, three rifles and two pistols were stolen in a burglary of a Kenai Peninsula sporting goods store owned by Harry Warren. Warren, responding to the store's burglar alarm, observed a dark sedan with the trunk open heading toward Anchorage on the Sterling Highway. Mr. Warren notified his wife, who in turn notified the police dispatch officer. State Trooper Sumey responded to the call, briefly investigated the area,[1] and then followed the fresh automobile tracks left in the snow. Sumey advised Trooper Kitchenmaster of the burglary, the vehicle description by Warren, and of his following the only set of tracks on the highway. Kitchenmaster, who was traveling on the Sterling Highway, observed a vehicle that matched Sumey's description going in the direction of Anchorage, leaving the only discernible set of tracks on the highway. He turned around, followed the vehicle for a number of miles then stopped it. There were four occupants in the vehicle, two adult males identified as Patrick Linden and Daniel Quinn, and two juvenile females. Trooper Kitchenmaster learned by radio that the vehicle was stolen, and placed all four occupants under arrest. The vehicle was then taken to Hamilton's garage, a short distance from Cooper's Landing, where Kitchenmaster was joined by Trooper Sumey. The troopers searched the vehicle and found three rifles and two handguns in the trunk that matched the serial numbers of the stolen guns.

On December 15, 1976, Quinn and Linden were subsequently charged with the crime of burglary not in a dwelling (AS 11.20.100). The first trial resulted in a mistrial because of the jury's inability to reach a verdict. After a second trial, the jury returned its verdict of guilty against both defendants.

There are four issues presented in this appeal. The first three pertain to both appellants, and the fourth pertains only to appellant Quinn. The issues are:

(1) Did the trial court's decision to allow juror questions constitute reversible error?

(2) Did the state trooper's destruction of evidence that may have been favorable to the appellant mandate a reversal?

(3) Did the appearance of the prosecuting attorney in the juvenile proceedings of F.B. and L.S. transform those proceedings into depositions taken in violation of Criminal Rule 15?

(4) Was appellant Quinn denied his right to speedy trial within 120 days of his arrest as required by Criminal Rule 45, thus mandating the dismissal with prejudice of charges against him?

I.

Appellants claim that the trial court's procedure allowing jurors to ask questions of witnesses, by submitting written questions to the trial judge, violates their right to be present at all stages of trial and constitutes reversible error. More specifically, appellants argue that any juror questions that were submitted to the trial court, and deemed inadmissible by the trial court, were not shown to appellants and, therefore, were private communications between judge and juror in derogation of defendants' right to be present at all stages of trial. Defendants' presence at all stages of the trial is mandated by Alaska Criminal Rule 38.[2]

Before the opening statements in this case, this subject was considered by the trial court. The court stated that juror questions would be permitted at the com-

---

1. After the suspects were apprehended, Trooper Sumey continued his investigation of the area. He took photographs of fresh footprints in the fallen snow directly outside the store and found a piece of cardboard marked with a wet bootprint in the basement portion of the gun shop.

2. Rule 38. Presence of the Defendant.

(a) *Presence Required.* The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.

pletion of the testimony of each witness, that the questions would be submitted in writing, and that the court would determine the admissibility of any questions, so that counsel would not have to object to a clearly inappropriate question. The court also told counsel that they would have the right to look at any questions asked by the jurors, regardless of the court's ruling upon the question. An alternative procedure which allows counsel to view the jurors' written questions prior to the court's determining the question's admissibility may be appropriate and would avail the defendant of greater due process protection.

Appellants argue that although they were in the courtroom when notes were passed from jurors to the court, they were never permitted to see the questions which the court deemed inadmissible. Appellants do not cite to any place in the record where they requested to see such questions and were refused such a request. Our own review of the record reveals no such instance. Appellants' claim of error is devoid of merit and does not warrant further discussion.

## II.

■ The next issue on appeal concerns the destruction of a piece of cardboard that allegedly was marked with a bootprint. Trooper Sumey testified at trial that he seized a piece of cardboard at the scene of the burglary which was marked with a wet vibram-type bootprint. When the trooper returned to the Soldotna office, he determined that the print had dried out and that it made no depression on the cardboard. The cardboard was logged into the evidence locker and brought to a court proceeding in Kenai. Before the cardboard could be introduced as evidence, he disposed of the item. Trooper Sumey stated that he threw away the cardboard after he determined

that the bootprint had dried and was no longer visible. He explained that it was a thin piece of cardboard and he did not notice any depressions on it. Appellant Quinn contends that because the police lost photographs that depicted bootprints outside the gun shop shortly after the crime occurred, Trooper Sumey destroyed the only remaining physical evidence in the case. He asserts that had the bootprint on the cardboard not been destroyed, it would have provided evidence corroborating Quinn's testimony that he was not present at the burglary. This assumes that the prints on his boots, which were taken as evidence, would not have matched the bootprint on the cardboard.

Appellants argue that this failure to preserve evidence deprived them of due process of law. They rely upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *United States v. Bryant*, 142 U.S. App.D.C. 132, 439 F.2d 642 (D.C.Cir.1971), and *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), in support of their position. However, these cases are distinguishable in a number of respects.[3]

In the case at bar there is doubt that the piece of cardboard had any evidentiary value. Trooper Sumey's uncontradicted testimony leads to that conclusion, and there is nothing else in the record which casts doubt upon that conclusion. Moreover, other evidence of greater convincing force connected appellants to the commission of the crime, namely, the stolen firearms found in the trunk of their vehicle, and the testimony of the two young women who were in the vehicle when it was stopped. As in *White v. State*, 577 P.2d 1056 (Alaska 1978), the materiality of the evidence was marginal at best. The destruction of the evidence was imprudent, but we cannot say that it amounted to bad faith. We hold that the

3. *Brady v. Maryland, supra*, establishes the general principle that the prosecution must not suppress evidence which is material to guilt or to punishment. *United States v. Bryant, supra*, concerned the loss of a tape recording of conversations between a narcotics agent and the defendant. The tape recording was crucial to the question of defendant's guilt, which hinged

on the credibility of the narcotics agent's testimony about those conversations. In *Lauderdale v. State, supra*, we reversed because the missing ampoules from a breathalyzer test were determinative of the defendant's blood alcohol level, and the blood alcohol level erected a rebuttable presumption of guilt.

destruction of this item of evidence did not amount to a violation of due process of law.[4]

### III.

■ The prosecutor of appellants Linden and Quinn in the present action appeared in the juvenile proceedings of both juvenile girls involved in the burglary. He obtained statements from both girls regarding their involvement and that of appellants in the burglary. Appellants contend that this, in effect, turned those proceedings into depositions taken without notice, in contravention of the requirements of Alaska Criminal Rule 15. Rule 15 requires that criminal depositions be taken upon notice to the parties.[5]

The testimony given at the juvenile proceedings was not placed in evidence at appellants' trial. The two young women testified in person at that trial. No attempt was made to introduce the earlier testimony under Criminal Rule 15(d). Therefore, we find appellants' argument to be devoid of merit.

### IV.

■ Appellant Quinn was arrested on December 9, 1976, and was first tried on May 12, 1977. Quinn contends that he was denied his right to speedy trial under Criminal Rule 45,[6] and that the charges against

---

4. Nor did it deny to appellants the right of confrontation or cross-examination. In this case the missing piece of evidence did not establish any presumption against appellants, as did the missing evidence in *Lauderdale v. State, supra,* and the trooper who handled the evidence testified at the trial and was subject to cross-examination. *See Wright v. State,* 501 P.2d 1360, 1371 (Alaska 1972).

5. Rule 15(a) and (b) provide:

(a) *When Taken.* Upon order of the court for good cause shown, the testimony of a prospective witness may be taken by either party for discovery upon notice and after the deposing party has disclosed all statements, exhibits, and witness lists required by Rule 16. Any designated book, paper, document, record, recording, or other material not privileged may be subpoenaed at the same time and place of the taking of the deposition. If a witness is committed for failure to give bail or appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. In considering a request for the taking of depositions, the court shall grant such a motion only if the taking of such deposition will not cause unreasonable delay in the trial of the action.

(b) *Notice of Taking.* The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. On motion of a party upon whom the notice is served, the court for cause shown may extend or shorten the time.

Rule 15(d) provides:

(d) *Use.* At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used by stipulation of the parties or if the witness is unavailable, as defined in section (e) of this rule, or if the witness gives testimony at the trial or hearing inconsistent with his deposition. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is relevant to the part offered and any party may offer other parts.

6. Rule 45(b) and (c) provide:

(b) *Speedy Trial Time Limits.* A defendant charged with either a felony or misdemeanor shall be tried within 120 days from the time set forth in section (c).

(c) *When Time Commences to Run.* The time for trial shall begin running, without demand by the defendant, as follows:

(1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information, relating to subsequent charges arising out of the same conduct, or the refiling of the original charge, shall not extend the time, unless the evidence on which the new charge is based was not available to the prosecution at the time the defendant was either initially arrested, arraigned, or served with the original charge, and a showing of due diligence in securing defendant for the original charges is made by the prosecution; or

(2) If the defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, from the date of mistrial, order granting a new trial, or remand.

him should be dismissed with prejudice. A period of 154 days elapsed between arrest and trial. Quinn maintains that only twenty days were excluded from the running of the rule: that ten day period between March 14 and 24 during which Quinn changed attorneys, and the ten day period between May 2 and 12 which was caused by his request for a continuance. The state urges that the period of time between March 7 and April 18, or, alternatively, March 7 and April 6, should be excluded as well. The state contends, therefore, that a minimum of forty days would be deducted from the 154 day period, meaning that Quinn's first trial was scheduled in compliance with Rule 45. The record indicates that Quinn's counsel, Assistant Public Defender Robert Cowan, prior to appellant's first trial, believed and represented to the court that Quinn would change his plea to guilty, therefore eliminating the necessity for trial, but that Quinn did not in fact do so. As a result, neither side was ready for trial on March 7, 1977, the date for which trial was originally set. At that time, Cowan moved to withdraw as counsel. The motion was granted, and arrangements were made for the appointment of Saul Friedman, already representing appellant Linden, as Quinn's new counsel.[7]

Prior to appointment of Friedman as counsel, the trial court asked Quinn whether he agreed with counsel's request to withdraw. Quinn indicated that he did. The court then questioned him regarding a new trial date:

> The Court: Do you have any objection to having the matter—and I recognize

that you're not represented in a sense now—do you have any objection to having the matter tried at the same time as Mr. Linden's matter is tried, April 18th?

> Mr. Quinn: Well, I don't know if that's enough time to get my case set up with a new lawyer, you know, I don't know whether that's enough time to do it in. His trial's when? A couple of weeks, something like that?

> The Court: April 18th. It's . . . ..

> Mr. Stark: It's some 6 weeks from now, Your Honor.

> The Court: . . . 6 weeks away.

> Mr. Quinn: I don't know. It might not be enough time.

Appellant contends that the failure of the trial court to explain to Quinn the nature of his right to speedy trial, as required by Criminal Rule 45(d)(2)[8] precluded Quinn from effectively waiving this right. The state contends that the lower court's granting of counsel's motion to withdraw, and its appointment of new counsel was in effect either a motion to continue trial or to appoint new counsel, thus tolling for thirty days the 120 day limit of Criminal Rule 45. The trial court so ruled during the March 7 proceedings.

The state does not specify which exclusion enumerated in Rule 45 should apply. Rule 45(d)(1) provides that:

> The following periods shall be excluded in computing the time for trial:
>
> (1) *The period of delay resulting from other proceedings concerning the defendant, including but not limited to* motions

---

7. Friedman later asked to withdraw as Quinn's counsel on March 10, 1977 citing conflict of interest in representing co-defendants. That request was granted on March 14, and defendant was without an attorney until March 24, when the Public Défender Agency in Anchorage was appointed to represent him. The trial court ruled that the ten day period when Quinn was without counsel would be excluded from the 120 day limit.

8. Criminal Rule 45(d)(2) provides:

> (d) *Excluded Periods.* The following periods shall be excluded in computing the time for trial:

> (2) The period of delay resulting from an adjournment or continuance granted at the timely request or with the consent of the defendant and his counsel. The court shall grant such a continuance only if it is satisfied that the postponement is in the interest of justice, taking into account the public interest in the prompt disposition of criminal offenses. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial under this rule and of the effect of his consent.

to dismiss or suppress, examinations and hearings on competency, the period during which the defendant is incompetent to stand trial, interlocutory appeals, and trial of other charges.

No pre-trial motion shall be held under advisement for more than 30 days and any time longer than 30 days shall not be considered as an excluded period. (emphasis supplied)

The language of this section which we have emphasized is sufficiently broad to include a period of delay due to granting a motion of counsel to withdraw. Thus, the court would have been justified in concluding that the delay caused by the motion was more than sufficient to bring this case within the 120 day limit prescribed by Criminal Rule 45.

There being no error, the conviction must be affirmed.

AFFIRMED.