Jeffrey M. Gamso, for appellant.

THE STATE OF OHIO, APPELLEE, *v.* FISHER, APPELLANT.

**[Cite as *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761.]**

(No. 2002–0201—Submitted January 21, 2003—Decided June 11, 2003.)

MOYER, C.J.

{¶ 1} Defendant-appellant, Michael A. Fisher, appeals from the judgment of the Tenth District Court of Appeals, which affirmed his conviction for felonious assault with a firearm specification. For the following reasons, we affirm the judgment of the court of appeals.

## I

{¶ 2} On April 5, 2000, the Franklin County Grand Jury indicted defendant-appellant for felonious assault with a firearm specification. Appellant entered a plea of not guilty and was subsequently tried in the Franklin County Court of Common Pleas. Prior to the presentation of evidence, the trial court informed the jurors that they would be permitted to ask questions of the witnesses that testified at trial. The trial judge instructed the jurors to submit their questions in writing to the bailiff, whereupon the judge and the attorneys would review the questions in a sidebar conference. The trial judge would then determine whether the questions were admissible under the rules of evidence and would read the admissible questions aloud to the witnesses.

{¶ 3} In accordance with the foregoing procedure, the jurors submitted 23 questions to six of the eight witnesses that testified at trial. The trial court disallowed five questions on evidentiary grounds and rephrased two questions for clarification. After reading a juror question, the trial court allowed the prosecution and defense counsel an opportunity to ask followup questions. Although defense counsel did not object to the particular questions that were read to the witnesses, counsel entered a continuing objection to the general practice of allowing jurors to submit questions.

{¶ 4} At the conclusion of the trial, the jury returned a guilty verdict on the felonious assault charge and the firearm specification. Appellant appealed from his conviction to the Tenth District Court of Appeals, alleging that the practice of allowing jurors to question witnesses is "inherently prejudicial." The court of appeals affirmed the conviction and certified its judgment to be in conflict with that of the First District Court of Appeals in *State v. Gilden* (2001), 144 Ohio App.3d 69, 759 N.E.2d 468.

{¶ 5} The cause is now before this court upon our determination that a conflict exists.

## II

{¶ 6} The court of appeals certified the following issue for our determination: "Is the practice of a trial court of allowing members of a jury to submit questions to the court and attorneys for possible submission to witnesses *per se* prejudicial to a criminal defendant?" (Italics sic.) A proper analysis of this issue requires (1) a clarification of the certified issue, (2) a survey of decisions from other

jurisdictions, and (3) an examination of the effect of juror questioning on the trial court proceeding. We consider each aspect of our analysis separately.

## A. Clarification of the Certified Issue

{¶ 7} As a preliminary matter, we note that the issue of whether juror questioning is "prejudicial" assumes that such questioning is error. Crim.R. 52(A), which governs the criminal appeal of a nonforfeited error, provides that "[a]ny *error* * * * which does not *affect substantial rights* shall be disregarded." (Emphasis added.) Thus, Crim.R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error"—i.e., a "[d]eviation from a legal rule." *United States v. Olano* (1993), 507 U.S. 725, 732–733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial court record—a so-called "harmless error" inquiry— to determine whether the error "affect[ed] substantial rights" of the criminal defendant. This language has been interpreted to "mean[ ] that the error must have been *prejudicial:* It must have affected the outcome of the [trial] court proceedings." (Emphasis added.) Id. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508. Consequently, we must determine that the practice of allowing jurors to question witnesses is error before we consider whether the practice is prejudicial.

{¶ 8} Even assuming that the practice of allowing juror questioning is error, we note that the certified issue is *not* whether the practice was merely prejudicial in the instant matter. Rather, the certified issue is whether the practice of allowing juror questioning is "per se prejudicial." In the context of this case, the phrase "per se prejudicial" can be interpreted one of two ways: (1) juror questioning is "inherently" prejudicial—i.e., it *always* affects the outcome of a trial, or (2) juror questioning, although not always affecting the outcome of a trial, should give rise to a *conclusive presumption* of prejudice as a matter of law. The first of these interpretations, however, is surely wrong. As appellant conceded at oral argument, "I will not tell this court, and I won't presume to try to convince you, that that process is one that * * * affects all jurors, or it is one that we can sit and point to prejudice in each and every situation." Indeed, the fact that a defendant may actually *benefit* from juror questioning renders such an argument unpersuasive.

{¶ 9} Given that appellant does not argue that juror questioning is "inherently" prejudicial, we construe appellant's use of the phrase "per se prejudicial" to suggest that a reviewing court should conclusively presume prejudice in cases in which juror questioning is permitted. We note, however, that the *type of error* that gives rise to such a presumption is more properly characterized as a "structural error." In *Arizona v. Fulminante* (1991), 499 U.S. 279, 306–312, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court denominated the

two types of constitutional errors that may occur in the course of a criminal proceeding—"trial errors," which are reviewable for harmless error, and "structural errors," which are per se cause for reversal. See *State v. Esparza* (1996), 74 Ohio St.3d 660, 661–662, 660 N.E.2d 1194. "Trial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307–308, 111 S.Ct. 1246, 113 L.Ed.2d 302. "Structural errors," on the other hand, "defy analysis by 'harmless error' standards" because they "affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.'" Id. at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Consequently, a structural error *mandates* a finding of "per se prejudice." See *Campbell v. Rice* (C.A.9, 2002), 302 F.3d 892, 900 ("We * * * conclude that [the relevant error] amounted to a structural error, mandating a finding of prejudice per se").

{¶ 10} Notwithstanding the logical nexus between a structural error and a finding of "per se prejudice," appellant's exclusive reliance on a "per se prejudicial" theory leads him to disregard the substantial body of case law that has delineated the parameters of the structural error doctrine. See *State v. Hill* (2001), 92 Ohio St.3d 191, 196–197, 749 N.E.2d 274 (summarizing United States Supreme Court jurisprudence regarding structural error). In the future, therefore, we encourage litigants and reviewing courts to analyze whether a constitutional error is cause for automatic reversal in the context of whether the error is "structural." Accordingly, appellant's "per se prejudice" argument—that juror questioning can never be harmless under Crim.R. 52(A)—is more appropriately characterized as alleging a structural error.

{¶ 11} With the foregoing in mind, we survey decisions from other jurisdictions for guidance on the propriety of juror questioning.

## B. Other Jurisdictions

{¶ 12} Although this court has not previously addressed the issue of whether jurors should be permitted to question witnesses in civil or criminal cases, courts in other jurisdictions have generally held that the practice is a matter committed to the sound discretion of the trial court. The primary disagreement in this area centers on whether—and to what extent—appellate courts should encourage or discourage the practice of allowing jurors to question witnesses. A brief review of these cases is therefore appropriate in resolving (1) whether juror questioning of witnesses should be a matter within the discretion of the trial court, and (2) if so, the extent to which this court should endorse the practice.

{¶ 13} Every federal circuit that has addressed the issue has concluded that the practice of allowing jurors to question witnesses is a matter within the

discretion of the trial court.[1]  Several of the federal circuits, however, discourage the practice of allowing jurors to question witnesses.  See, e.g., *Feinberg*, 89 F.3d at 336 ("We agree that the practice is acceptable in some cases, but do not condone it").  Other federal circuits, by contrast, liberally permit such questioning.  See, e.g., *Callahan*, 588 F.2d at 1086 ("If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it").

{¶ 14} The vast majority of state courts have also concluded that juror questioning is a matter committed to the sound discretion of the trial court.[2]  Further, a review of early state court decisions reveals that juror questioning is a long-standing practice in American courtrooms.  As early as 1895, state courts began "plac[ing their] stamp of approval upon the practice of * * * jurors interrogating witnesses in an endeavor to ascertain the facts" in civil cases.  *White v. Little* (1928), 131 Okla. 132, 134, 268 P. 221, citing *Schaefer v. St. Louis & S. Ry. Co.* (1895), 128 Mo. 64, 30 S.W. 331.  By 1930, the Supreme Courts of Illinois, Missouri, North Carolina, South Carolina, Kentucky, Pennsylvania, and

---

1.  See *United States v. Sutton* (C.A.1, 1992), 970 F.2d 1001, 1005; *United States v. Bush* (C.A.2, 1995), 47 F.3d 511, 514–515; *United States v. Hernandez* (C.A.3, 1999), 176 F.3d 719, 723; *DeBenedetto v. Goodyear Tire & Rubber Co.* (C.A.4, 1985), 754 F.2d 512, 516 (civil); *United States v. Callahan* (C.A.5, 1979), 588 F.2d 1078, 1086, fn. 2; *United States v. Collins* (C.A.6, 2000), 226 F.3d 457, 461–465; *United States v. Feinberg* (C.A.7, 1996), 89 F.3d 333, 337; *United States v. Lewin* (C.A.8, 1990), 900 F.2d 145, 147; *United States v. Gonzales* (C.A.9, 1970), 424 F.2d 1055; *Willner v. Soares* (Feb. 5, 2003), C.A.10, No. 02–1352, 2003 WL 254327; *United States v. Richardson* (C.A.11, 2000), 233 F.3d 1285, 1288–1291; *Dobbins v. United States* (C.A.D.C.), 157 F.2d 257, 260.

2.  See, e.g., *Prather v. Nashville Bridge Co.* (1970), 286 Ala. 3, 4–5, 236 So.2d 322 (civil); *Linden v. State* (Alaska 1979), 598 P.2d 960, 962–963; *State v. LeMaster* (1983), 137 Ariz. 159, 163–164, 669 P.2d 592; *Nelson v. State* (1974), 257 Ark. 1, 4, 513 S.W.2d 496; *People v. McAlister* (1985), 167 Cal.App.3d 633, 643–646, 213 Cal.Rptr. 271; *Gurliacci v. Mayer* (1991), 218 Conn. 531, 559–560, 590 A.2d 914 (civil); *Yeager v. Greene* (D.C.1985), 502 A.2d 980, 985–986; *Ferrara v. State* (Fla.1958), 101 So.2d 797, 801; *State v. Culkin* (2001), 97 Hawaii 206, 225–226, 35 P.3d 233; *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650; *Rudolph v. Iowa Methodist Med. Ctr.* (Iowa 1980), 293 N.W.2d 550, 555–556 (civil); *State v. Hays* (1994), 256 Kan. 48, 61, 883 P.2d 1093; *Transit Auth. of River City v. Montgomery* (Ky.1992), 836 S.W.2d 413, 416 (civil); *Commonwealth v. Urena* (1994), 417 Mass. 692, 701–702, 632 N.E.2d 1200; *People v. Heard* (1972), 388 Mich. 182, 186–188, 200 N.W.2d 73; *Callahan v. Cardinal Glennon Hosp.* (Mo.1993), 863 S.W.2d 852, 867 (civil); *State v. Graves* (1995), 274 Mont. 264, 270, 907 P.2d 963; *Flores v. State* (1998), 114 Nev. 910, 912–913, 965 P.2d 901; *State v. Jumpp* (1993), 261 N.J.Super. 514, 530, 619 A.2d 602; *State v. Rodriguez* (1988), 107 N.M. 611, 614, 762 P.2d 898; *People v. Bacic* (1994), 202 A.D.2d 234, 235, 608 N.Y.S.2d 452; *State v. Howard* (1987), 320 N.C. 718, 725–727, 360 S.E.2d 790; *Krause v. State* (1942), 75 Okla.Crim. 381, 386, 132 P.2d 179; *Boggs v. Jewell Tea Co.* (1920), 266 Pa. 428, 434, 109 A. 666 (civil); *Day v. Kilgore* (1994), 314 S.C. 365, 444 S.E.2d 515 (civil); *Byrge v. State* (Tenn.Crim.App.1978), 575 S.W.2d 292, 295; *State v. Martinez* (1958), 7 Utah 2d 387, 389, 326 P.2d 102; *State v. Parker* (1988), 149 Vt. 393, 405, 545 A.2d 512 (civil); *Williams v. Commonwealth* (1997), 24 Va.App. 577, 484 S.E.2d 153; *State v. Munoz* (1992), 67 Wash.App. 533, 837 P.2d 636; *Sommers v. Friedman* (1992), 172 Wis.2d 459, 473–478, 493 N.W.2d 393 (civil).

Oklahoma had approved the practice of allowing jurors to examine witnesses or otherwise concluded that the practice did not constitute reversible error. *Chicago, Milwaukee & St. Paul Ry. Co. v. Harper* (1889), 128 Ill. 384, 21 N.E. 561 (civil); *Schaefer*, 128 Mo. 64, 30 S.W. 331 (civil); *State v. Kendall* (1907), 143 N.C. 659, 57 S.E. 340; *State v. Bradford* (1911), 87 S.C. 546, 70 S.E. 308; *Boggs v. Jewell Tea Co.*, 266 Pa. 428, 109 A. 666 (civil); *Louisville Bridge & Terminal Co. v. Brown* (1925), 211 Ky. 176, 277 S.W. 320 (civil); *White*, 131 Okla. at 132, 268 P. 221 (civil).

{¶ 15} Judicial approval of this long-established practice is no less pervasive today. See *State v. Costello* (Minn.2002), 646 N.W.2d 204, 209 (noting that juror questioning is supported by the American Bar Association, federal courts, and the majority of state courts). Nevertheless, several jurisdictions permit juror questioning only where procedural safeguards are employed. See, e.g., *LeMaster*, 137 Ariz. at 164–165, 669 P.2d 592; *Gurliacci*, 218 Conn. at 560–561, 590 A.2d 914; *Rudolph*, 293 N.W.2d at 556 (Iowa); *Graves*, 274 Mont. at 270–271, 907 P.2d 963; *Jumpp*, 261 N.J.Super. at 531–533, 619 A.2d 602; *Munoz*, 67 Wash.App. at 536–538, 837 P.2d 636. Other jurisdictions have relegated the procedure by which jurors submit questions to the discretion of the trial court. *Nelson*, 257 Ark. at 4, 513 S.W.2d 496; *Montgomery*, 836 S.W.2d at 416 (Kentucky); *Heard*, 388 Mich. at 187, 200 N.W.2d 73; *Krause*, 75 Okla.Crim. at 387, 132 P.2d 179.

{¶ 16} Only five jurisdictions prohibit jurors from questioning witnesses. See *Costello*, 646 N.W.2d at 214 (Minnesota) (prohibiting juror questioning in criminal trials); *Wharton v. State* (Miss.1998), 734 So.2d 985, 990; *State v. Zima* (1991), 237 Neb. 952, 956, 468 N.W.2d 377; *Morrison v. State* (Tex.Crim.App.1992), 845 S.W.2d 882, 889 (prohibiting juror questioning in criminal trials); *Matchett v. State* (1988), 257 Ga. 785, 786, 364 S.E.2d 565. Among these jurisdictions, however, Georgia, Mississippi, and Nebraska have concluded that such error may be either forfeited or harmless beyond a reasonable doubt. *Matchett*, 257 Ga. at 786, 364 S.E.2d 565; *Wharton*, 734 So.2d at 990; *Zima*, 237 Neb. at 956–957, 468 N.W.2d 377. Consequently, only two states—Texas and Minnesota—have held that juror questioning is not subject to harmless error analysis. See *Morrison*, 845 S.W.2d at 889; *Costello*, 646 N.W.2d at 215.

{¶ 17} Against this backdrop, we turn to the instant case.

## III

{¶ 18} Appellant argues, in effect, that the practice of allowing jurors to question witnesses is a "structural error." In determining whether an alleged error is "structural," our threshold inquiry is whether such error "involves the deprivation of a constitutional right." *State v. Issa*, 93 Ohio St.3d 49, 74, 752 N.E.2d 904 (Cook, J., concurring); see *Esparza*, 74 Ohio St.3d at 662, 660 N.E.2d 1194 ("[T]he trial-error/structural-error distinction is irrelevant unless it is first

established that *constitutional* error has occurred"). (Emphasis sic.) To that end, appellant argues that juror questioning violates the right to an impartial jury under Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution. Resolution of this issue requires us to examine the effect of juror questioning on the trial court proceeding.

{¶ 19} The hallmark of the American trial is the pursuit of truth. Such truth—and, in the end, justice—is attainable only if counsel successfully communicates evidence to the jury. History has nonetheless relegated the jury to a passive role that dictates a one-way communication system—a system that, in its traditional form, is not amenable to resolving juror confusion. The practice of allowing jurors to question witnesses provides for two-way communication through which jurors can more effectively fulfill their fundamental role as factfinders.

{¶ 20} In *United States v. Callahan*, 588 F.2d at 1086, the United States Court of Appeals for the Fifth Circuit articulated the paramount benefit of such communication: "There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop truth. It may sometimes be that counsel are so familiar with a case that they fail to see problems that would naturally bother a juror who is presented with the facts for the first time."

{¶ 21} Juror questioning not only enhances the ability of jurors to discern truth but also may provide counsel an opportunity to better comprehend jurors' thought processes and their perception of case weaknesses. *Flores*, 114 Nev. at 912, 965 P.2d 901. Recognizing a similar advantage of juror questioning, the United States Court of Appeals for the District of Columbia has observed: "Questions by jurors also may bring to the court's and counsel's attention *improper* concerns which can be promptly addressed with cautionary instructions, admonishing the juror who asked the question that the matter is not relevant to the case and should not be brought to the attention of other jurors or play any part in the inquiring juror's consideration of the case." (Emphasis sic.) *Yeager*, 502 A.2d at 998.

{¶ 22} Furthermore, the practice of allowing jurors to question witnesses may increase juror attentiveness at trial. *Flores*, 114 Nev. at 912, 965 P.2d 901. The D.C. Court of Appeals, acknowledging such a benefit, has observed that "there is reason to believe that permitting receivers of information, *e.g.*, jurors, to ask questions enhances not only their ability to understand what is being communicated, but results in their putting forth more effort to listen and to understand because they *know* they may ask questions. A concomitant benefit predictable

from these effects might well be a reduced likelihood that the court will be required to intervene to question witnesses or elucidate issues that are clarified by juror questions." (Emphasis sic.) *Yeager*, 502 A.2d at 998–1000.

{¶ 23} Finally, empirical research suggests that jurors who are allowed to question witnesses are more satisfied with their service and more confident with their verdicts. Berkowitz, Breaking the Silence: Should Jurors Be Allowed to Question Witnesses During Trial? (1991), 44 Vand.L.Rev. 117, 141. As one Ohio jurist has noted, "Allowing jurors to ask questions makes jurors feel more like a part of the judiciary, and less like helpless outsiders trying to penetrate a sanctimonious institution. This type of change can only bring us closer to the ultimate goal of our legal system: justice." Valen, Jurors Asking Questions: Revolutionary or Evolutionary? (1993), 20 N.Ky.L.Rev. 423, 439.

{¶ 24} Although we are cognizant of the potential benefits of juror questioning, we are also mindful of the concerns associated with the practice. Courts have identified four principal dangers inherent in juror questioning: (1) jurors may submit inadmissible questions, (2) counsel may refrain from objecting to improper questions for fear of offending jurors, (3) juror interruptions may disrupt courtroom decorum, and (4) such questioning may distort juror impartiality. *Spitzer v. Haims & Co.* (1991), 217 Conn. 532, 546–547, 587 A.2d 105. The extent to which these dangers affect the trial process depends, in great part, upon the manner in which such questioning is conducted. *Culkin,* 97 Hawaii at 206, 35 P.3d 233.

{¶ 25} In the instant case, the procedural safeguards applied by the trial court operated to circumvent many of the foregoing dangers. These safeguards included (1) requiring the jurors to submit their questions in writing to the court, whereupon the judge could review and exclude improper questions, (2) providing counsel an opportunity to object at sidebar, thereby eliminating the danger that a juror would be affronted by an objection, and (3) specifying the precise time at which jurors should submit questions to prevent interference with attorney questioning and courtroom decorum.

{¶ 26} The final concern associated with juror questioning lies in the potential distortion of the adversary system. Appellant argues that "by allowing jurors to question witnesses, the role of the jury is fundamentally changed" from neutral factfinder to partial advocate. Such an argument, however, rests on the erroneous premise that one must be passive to be impartial. To the contrary, Evid.R. 614(B) expressly authorizes the trial court—the factfinder in a bench trial—to "interrogate witnesses, in an impartial manner, whether called by itself or by a party." Consequently, the ability of a factfinder to question witnesses *is not* inconsistent with the duty of impartiality.

{¶ 27} Having determined that jurors may submit questions and, at the same time, maintain impartiality, we conclude that the mere *possibility* that a juror may submit a biased question or engage in premature deliberation does not violate the Ohio or United States Constitution. The issue of whether juror questions are aimed at advocacy rather than clarification cannot be answered in the abstract, but instead requires courts to examine the nature of each question in the overall context of a trial. We conclude that the trial court is in the best position to render such a determination and, within its sound discretion, disallow improper juror questions.

{¶ 28} Given that the practice of allowing jurors to question witnesses is not a constitutional error, it follows that the practice cannot be a structural error. See *Issa,* 93 Ohio St.3d at 74, 752 N.E.2d 904 (Cook, J., concurring). Consequently, we answer the certified issue in the negative. We further note that appellant cites no binding authority—and we are aware of none—for the proposition that juror questioning is a *non*constitutional error. Evid.R. 611(A), contrary to such a proposition, grants the trial court discretion to "exercise reasonable control over the *mode* and order of interrogating witnesses and presenting evidence so as to * * * make the interrogation and presentation effective for the ascertainment of the truth." (Emphasis added.) Accordingly, we conclude that the practice of allowing jurors to question witnesses is not error—constitutional or otherwise— under Crim.R. 52(A).

{¶ 29} For the foregoing reasons, we hold that the practice of allowing jurors to question witnesses is a matter committed to the discretion of the trial court. To minimize the danger of prejudice, however, trial courts that permit juror questioning should (1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness, (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury,[3] (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask followup questions of the witnesses.

{¶ 30} Our nation's profound commitment to trial by jury is founded on competing principles that, in one sense, foster the development of truth and, in another sense, stifle it. Such is the great paradox of the criminal justice system. To balance these principles in the assortment of cases with which a trial court is

---

3. As the Supreme Judicial Court of Massachusetts has noted, "the [trial] judge should rule on any objections [when counsel objects at sidebar], including any objection that the question touches on a matter that counsel purposefully avoided as a matter of litigation strategy, and that, if asked, will cause particular prejudice to the party." *Commonwealth v. Britto* (2001), 433 Mass. 596, 614, 744 N.E.2d 1089.

faced—dissimilar as one case is from another—appellate courts generally defer to the discretion of the trial court, rather than attempting to account for the infinite array of circumstances that may arise with a categorical rule. A less prudent approach would eviscerate that discretion at the first sign of abuse—or, worse yet, at the mere potential for it. Our decision today refrains from adopting such a rule.

## IV

{¶ 31} Accordingly, we hold that the decision to allow jurors to question witnesses is a matter within the discretion of the trial court and should not be disturbed on appeal absent an abuse of that discretion. The judgment of the court of appeals is affirmed.

Judgment affirmed.

RESNICK, F.E. SWEENEY, CHRISTLEY, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, J., concurs in syllabus and judgment.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for COOK, J.

---

Ron O'Brien, Franklin County Prosecuting Attorney, and Laura M. Rayce, Assistant Prosecuting Attorney, for appellee.

Donald C. Schumacher, for appellant.

Elizabeth Kelly and Paul Skendelas, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

Raymond Vasvari, Legal Director, and Melissa Day, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.