OPINION *Page 2 
{¶ 1} Defendant-appellant, Carl Fanaro, appeals his conviction and sentences from the Licking County Court of Common Pleas on ninety eight counts of securities violations and one count of engaging in a pattern of corrupt activity. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On January 27, 2006, the Licking County Grand Jury returned a one hundred and thirty four (134) felony count indictment against the appellant. The indictment included violations of R.C. 1707.44 for the sale of unregistered securities, the sale of securities without a license and false representation in the sale of securities. The indictment also included violations of R.C. 2913.51 for receiving stolen property and one count of engaging in a pattern of corrupt activity in violation of 2923.32(A)(1).
 {¶ 3} On February 24, 2006, the appellant entered a not guilty plea in abstentia to the charges in the indictment.
 {¶ 4} On October 16, 2006, the matter proceeded to trial. Prior to the presentation of evidence the state moved to dismiss eight (8) counts in the indictment.[1] On October 27, 2006, the jury found appellant guilty of ninety-nine (99) counts in the indictment.[2] The jury was unable to reach a unanimous verdict on the remaining counts for receiving stolen property. Appellant was found guilty of having committed thirty-two *Page 3 
(32) fifth degree felonies, sixty six (66) third degree felonies and one (1) first degree felony. Sentencing was deferred pending a pre-sentence investigation.
 {¶ 5} On November 6, 2006, the State moved to voluntarily dismiss the remaining twenty seven (27) counts for receiving stolen property. On November 8, 2006, the State's motion to dismiss was granted.
 {¶ 6} On December 18, 2006, appellant appeared for sentencing. The trial court sentenced appellant to serve six months on each of the thirty two (32) fifth degree felonies and further ordered these sentences to run consecutively to each other for a total of sixteen (16) years. The trial court also ordered appellant to serve one (1) year on three (3) of the third degree felonies (counts one, six and twenty-six) to run consecutively to each other for a total of three (3) years. The trial court further ordered appellant to serve a five (5) year sentence for the first degree felony conviction for engaging in a pattern of corrupt activity. Finally the trial court ordered the fifth degree (16 year) and third degree felony (3 year) sentences to run consecutively to each other and all other sentences to run concurrently for a total aggregate sentence of nineteen (19) years. Appellant was further ordered to pay restitution and the costs of the action. The fines were waived.
 {¶ 7} It is from this conviction and sentence, that appellant now appeals setting forth the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN SENTENCING THE DEFENDANT-APPELLANT TO A TERM OF NINETEEN (19) YEARS OF IMPRISONMENT THROUGH ENGAGING IN JUDICIAL FACT FINDING BELOW. *Page 4 
 {¶ 9} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN SENTENCING THE DEFENDANT-APPELLANT TO A TERM OF NINETEEN (19) YEARS OF IMPRISONMENT DUE TO THE FAILURE OF THE TRIAL COURT TO MERGE THE SEVERAL, CONSECUTIVE COUNTS FOR PURPOSES OF SENTENCING.
 {¶ 10} "III. THE TRIAL COURT COMMITTED CONTINUING ERROR BY ALLOWING THE INTRODUCTION OF PREJUDICIAL EVIDENCE THROUGHOUT THE COURSE OF THE TRIAL."
 I {¶ 11} In the first assignment of error, appellant argues that the trial court engaged in judicial fact finding prior to the imposition of appellant's nineteen (19) year sentence in violation of Blakely v.Washington (2005), 542 U.S. 296, 124, S.Ct. 2531, 159 L.Ed.2d 403 andState v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E.2d 470. We disagree.
 {¶ 12} Under the Ohio law, and in accordance with the Foster decision, the trial court is vested with discretion to impose a prison term within an applicable statutory range. State v. Mathis, 109 Ohio St. 3d 54,2006-Ohio-855, 846 N.E.2d1. However, in exercising its discretion the court remains guided by the legislation designed to establish uniformity, and must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case *Page 5 
itself." State v. Mathis, 109 Ohio St. 3d at 62.[3] The fact that the trial judge explained his reasons for imposing a particular sentence, on the record, cannot transform a sentence within the range provided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding.'" State v.Goggans, Delaware App. No. 2006-CA-07-0051, 2007-Ohio-1433, at paragraph 29.
 {¶ 13} In this case, the applicable statutory sentencing ranges are as follows: for a first degree felony the court may impose a three, four, five, six, seven, eight, nine or ten year sentence. For a third degree felony the court may impose a one, two, three, four or five year sentence; and, for a fifth degree felony the court may impose a six, seven, eight, nine, ten, eleven, or twelve month sentence. Furthermore, "if an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." State v.Foster, 109 Ohio St. 3d at 31.
 {¶ 14} Prior to the imposition of sentence the trial court informed the parties that the maximum possible sentence which could be imposed by the trial court was 377 years. The trial court further stated, "the court has considered the purposes and principles of sentences set out under Section 2929.11 of the Ohio Revised Code, as well as the seriousness and recidivism factors set out under Section 2929.12." Transcript of sentencing proceeding at pages 33 and 34, hereinafter T.S. at ___). The trial court found that the evidence established that the appellant victimized older, retired, financially unsophisticated people whom he groomed with personal charm to *Page 6 
invest their small life savings in risky, long term, securities. The court further found that appellant's activities had a vast effect on the victims' emotional and financial security. T.S. 33-38. The trial court then proceeded to impose a minimum six month sentence on each of the thirty-two third degree felonies and a minimum one year sentence on three, third degree felonies, to run consecutively to each other, and concurrently to all other counts, for an aggregate nineteen (19) year sentence.
 {¶ 15} We note that appellant discusses an alleged disparity between appellant's sentence and the sentence imposed for a co-conspirator. We decline to consider these arguments as they involve matters outside the record in this case. However, we find that the record establishes that the appellant did not receive the possible maximum consecutive sentence of 377 years, and that the sentence imposed was not only the minimum for each charged count within the statutory ranges, but, was also in compliance with Foster. Furthermore, pursuant to Goggans we do not find that the statements made by the trial court transform the sentence into a constitutionally infirm sentence on the grounds that the statements constitute impermissible judicial fact finding.
 {¶ 16} Accordingly, we hereby overrule appellant's first assignment of error.
 II {¶ 17} In the second assignment of error appellant argues that the trial court erred in entering a judgment of conviction and sentence where the charged security violations were allied offenses of similar import. We disagree.
 {¶ 18} R.C. 2941.25 (A) governs allied offenses and provides as follows: *Page 7 
 {¶ 19} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 20} In State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, the Ohio Supreme Court established a two-part test for determining whether multiple offenses are allied offenses of similar import. The test requires a reviewing court to first compare the elements of the offenses in the abstract to determine whether the elements correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. Then, if the elements do so correspond, the offenses are allied offenses of similar import and the defendant may only be convicted of and sentenced for both offenses if he committed the crimes separately or with a separate animus. State v. Rance,85 Ohio St. 3d at 638-639.
 {¶ 21} In this case, appellant was convicted of the sales of securities without a license in violation of R.C. 1707.44(A)(1); making false representations in the sale of securities in violation of R.C.1707.44(B)(4); selling unregistered securities in violation of R.C.1707.44(C)(1); securities fraud in violation of R.C. 1707.44(G); and engaging in a pattern of corrupt activity in violation of R.C. 2923.32. The language of the charging statutes are as follows:
 {¶ 22} R.C. 1707.44(A)(1) [unlicensed dealer] states that, "[n]o person shall engage in any act or practice that violates division (A), (B), or (C) of section 1707.14 of the Revised Code, and no salesperson shall sell securities in this state without being licensed pursuant to section 1707.16 of the Revised Code. R.C. 1707.44(B)(4) [false representations in the sale of securities] states that, "[n]o person shall knowingly make *Page 8 
or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes:* * *(4) Selling any security in this state."
 {¶ 23} R.C. 1707.44(C)(1) [sale of unregistered securities] states that, "[n]o person shall knowingly sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under the following descriptions: (1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in section 1707.03, 1707.04 or 1707.34 of the Revised Code, has not been registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description."
 {¶ 24} R.C. 1707.44(G) [securities fraud] states, "[n]o person in purchasing or selling securities shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited. A violation of this section is a second degree felony."
 {¶ 25} R.C. 2923.32.(A)(1) [engaging in a pattern of corrupt activity] states that, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Corrupt activity is defined in R.C.2923.31(I) and includes engaging in conduct constituting a violation of divisions (B), (C)(4), (D), (E), or (F) of R.C. 1707.44.
 {¶ 26} In comparing the statutes, R.C. 1707.44(A)(1) prohibits the sale of securities by an unlicensed person, R.C. 1707.44(C)(1) prohibits the sale of unregistered securities, R.C. 1707.44(B)(4) prohibits affirmative misrepresentations in *Page 9 
the sale of securities, R.C. 1707.44(G) prohibits both affirmative misrepresentations and fraudulent non-disclosures in the sale of securities (i.e. material omissions)[4] and, R.C 2923.32(A)(1) prohibits a pattern of conduct in the unlawful sale of securities. Pursuant to the threshold analysis under Rance, we find that, in an abstract comparison, these security violations and the charge of engaging in a pattern of corrupt activity do not correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. Therefore, we find that the charges are not allied offenses of similar import.
 {¶ 27} Accordingly, appellant's second assignment of error is not well taken and is hereby overruled.
 III {¶ 28} In the third assignment of error appellant argues that the trial court abused its discretion in permitting the introduction of other acts evidence pursuant to Civ.R.404(B). Specifically, appellant argues that the trial court erred in admitting evidence that appellant's Florida securities license had been suspended in the 1980's and that the Ohio Securities Commission had issued a "cease and desist" order. We disagree.
 {¶ 29} In a criminal case where the defendant alleges that it was prejudicial error to allow the jury to consider certain evidence, the reviewing court must first determine if it was error to permit the jury to consider the evidence and, if so, whether such error was prejudicial or harmless. State v. Davis (1975), 44 Ohio App.2d 335, *Page 10 338 N.E.2d 793. An appellate court may disregard error occurring in a criminal proceeding if the error is harmless or non-prejudicial, in the sense that it could not be said to have affected the outcome of the proceeding. State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761,789 N.E.2d 222.
 {¶ 30} In this case, during the course of the trial the jury heard the testimony of the following victim-investors or relatives of deceased victims: Joyce Phipps, Sondra Soward, Alice Ceisil, Lola Phillips, Richard Price, Theresa Wygant, Ralph Redduck, Donald Betts, Richard Pickering, Connison Wilson, Lorraine Rataiczak, Richard Woodyard, Keith Emmons, Vicki West, Cletus Sorg, and Elmer Pletcher.
 {¶ 31} Each of the victims had a similar profile and testified to a pattern of activity regarding the appellant's sale of securities and the resulting securities violations. Each of the victims were retired, between the ages of 60 and 90 years of age, high school graduates, with a moderate retirement income, modest savings and little or no investment or financial expertise.
 {¶ 32} Each victim was initially contacted by the appellant for the purposes of estate and financial planning. Some victims sought to exclude their assets from probate. Other victims sought to protect their assets for disabled or ailing relatives. Richard Pickering testified that he sought to establish safe investments to be placed in trust to assure financial security for his adult son with Downs Syndrome. T.II.742.
 {¶ 33} During the course of the ongoing "professional" relationship the appellant provided each victim with a business card and personal resume. The resume included false information regarding the appellant's training, education, ongoing certifications, *Page 11 
and experience.[5] Sandra Soward testified that the appellant represented himself as a paralegal and a financial planner. T.I.368. Keith Emmons testified that appellant helped him obtain a power of attorney for the purpose of investing his ninety-eight year old mother's money and that he personally invested money. Mr. Emmons testified that the appellant's resume was "impressive" and "very influencing". T.III. 924.
 {¶ 34} The victims each testified that the appellant gained their trust. Theresa Wygant, an eighty-two year old widow, testified that she trusted the appellant completely and "I just needed someone to help me". T.II. 636 and 637.
 {¶ 35} The appellant advised the victims that he could provide them with immediate opportunities to invest in cable companies. The appellant further advised the victims that the investments were low risk with a guaranteed 10 percent, tax free monthly dividend, and the investors would have the ability to withdraw or transfer the invested funds. Joyce Phipps testified, "He advised me that I could get my money any time if I wanted ten cents or $10.00 or $100.00, I could withdraw my money at any time, and I couldn't-I couldn't." T.I. 303.
 {¶ 36} During the course of the transactions, the appellant asked the victims to sign either blank documents or to sign documents without any explanation of the terms. Richard Pickering testified that he signed the documents without reading them because "I trusted him." T.III.741.
 {¶ 37} The appellant failed to disclose that the investments were being made in a limited partnership. Investors were misled into believing that they were purchasing *Page 12 
stock in cable companies. Ralph Redduck, 90 years of age, contacted the appellant to set up a living trust for his invalid adult son who was confined to a wheelchair. Mr. Redduck testified that the appellant never explained that the investment was in a limited partnership or the high level risk involved. T.II (Part 2). 659 and 665. The majority of the victims testified that they believed they were purchasing stock in cable companies. Connison Wilson testified, "I thought I was buying stock." T.VIII.766. Sandra Sowards testified, "we were under the impression we were actually buying stock into a cable company." T.I.384. Donald Betts testified, "He [appellant] said everybody bought cable or used cable so there wouldn't be no risk involved." T. II. 703.
 {¶ 38} Satisfied with the appellant's representations regarding the investment profiles, influenced by appellant's false credentials, and finding appellant trustworthy, the victims individually wrote checks or wired money to either Cable-Tex, Americable V, or Cable Unlimited, Inc. and invested sums in amounts ranging from approximately fourteen thousand to one hundred thousand dollars. Pursuant to the testimony presented, in total the victims invested more than five hundred thousand dollars between the years of 2002 and 2004.
 {¶ 39} The evidence established that prior to accepting the investments, the appellant failed to provide the victims with private placement memorandums. Private Placement Memorandums ("PPM") are generally provided to investors prior to accepting money. The PPM sets forth the investment profile for the cable companies. The PPM manuals for the companies involved in these instances, explained that the investments were being made in a "speculative", long term (25 year), high risk limited partnership and that invested money could not be withdrawn or returned to the investor. *Page 13 
In all cases, the victims received the PPM months after the investment had been made and their investment had been squandered. Vicky West testified that she invested twenty-thousand dollars in 2002, received the PPM in 2004, and was "devastated". She testified that she had invested all her savings and had no retirement pension. T.III. 957 and 959. Each victim testified that if the PPM had been available prior to the investment, they would not have taken a long term, high risk, especially at their ages and during their retirement years. Joyce Phipps testified that had she been provided with the information prior to making the investment, there was "no way" she would have invested. T. I. 303.
 {¶ 40} After the initial lump sum investment, each victim received, (what they believed to be), distribution checks. The amount of the distribution checks were nominal compared to their investments. Eventually they received a letter on cable company letterhead, signed by a general partner, stating that due to computer problems they would not be receiving monthly distributions. Eventually, they each learned, through correspondence, that the cable companies would no longer be making payments and that their investments were terminated without any reimbursement. Alice Ciesil testified that she never recovered her investments of forty thousand, twenty thousand and fifty-five thousand dollars. T. II.481. Lola Phillips testified that she received a letter that no further checks would be received. T.II.555.
 {¶ 41} Attorney Robert Hendrix, an attorney who accepted referrals from AARP and who worked with the appellant to meet clients and prepare estate planning documents, testified that he learned that the appellant was misrepresenting himself as a paralegal, advised appellant to stop, and terminated the relationship. T.III.989. *Page 14 
 {¶ 42} Richard Distelhorst, a CPA who prepares tax returns for cable companies testified that the victims, as limited partners, never received "dividends" or interest on their investments. He stated that the victims actually received partial returns of their own capital investments, i.e. they received their own money. That was the reason it was tax free. T. IV.1217.
 {¶ 43} Sheldon Safko, an attorney employed by the Enforcement Section of the Division of Securities testified that if a person is purchasing a limited partnership, they are purchasing a security according to Ohio law. He further testified that in order to sell a security, you must have a license from the Division of Securities. He testified that the appellant was never licensed in the State of Ohio. T.I. 165-166. Furthermore, he testified that securities, such as limited partnerships, must be registered or fall under an exemption. In this case, the security sales were neither exempted nor registered. T.I. 180-182.
 {¶ 44} Based upon the evidence presented, we find that, even assuming arguendo that the trial court erred in permitting the introduction of other acts evidence, there was overwhelming evidence to support the conviction. Therefore, the error would be harmless and non-prejudicial. *Page 15 
 {¶ 45} Accordingly, appellant's third assignment of error is not well taken and is hereby overruled.
 {¶ 46} The Judgment of the Licking County Court of Common Pleas is hereby affirmed.
 Edwards, J. Farmer, P.J. and Delaney, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The State dismissed counts, 92, 93, 94, 95, 113, 114, 115, and 116.
[2] The convictions included as follows: twenty seven (27) counts of sales of unregistered securities, in violation of R.C. 1707.44(C)(1); twenty seven (27) counts of sales of securities without a license in violation of R.C. 1707.44(A)(1); twenty seven (27) counts of fraudulent practices in the sale of securities, in violation of R.C. 1707.44(G); seventeen (17) counts of false representation in the sale of securities, in violation of R.C. 1707.44(B)(4); one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1).
[3] For example, guided by the overriding purposes of felony sentencing the court can sentence in order to "protect the public from future crime by the offender" and "to punish the offender." R.C.2929.11(A). The court can also consider, inter alia, whether the victim suffered serious psychological and economic harm as a result of the offense, whether the offenders' occupation or profession obliged the offender to prevent the offense, and whether the offender's relationship with the victim facilitated the offense. R.C. 2929.12(B).
[4] "R.C. 1707.44(G) prohibits not only affirmative misrepresentation, but also fraudulent non-disclosure where there is a duty to disclose."State v. Warner (1990), 55 Ohio St.3d 31, 564 N.E. 2d 18. See also, R.C.1707.01(J) for the definition of "fraud."
[5] He admittedly, misrepresented that he held a bachelor of arts degree from the University of Maine in 1965, that he was a paralegal for the law firm of Hendrix and Associates, that he was a certified senior advisor, that he was a certified financial planner with experience at Merrill Lynch, and that he was a certified estate counselor. Transcript of Proceedings, Volume VI at pages 1721-1727. *Page 1