The STATE of Ohio, Appellee,

v.

YORK, Appellant.

[Cite as *State v. York*, 154 Ohio App.3d 463, 2003-Ohio-4629.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–01–19.

Decided Sept. 2, 2003.

Gene P. Murray, for appellant.

Ken Egbert Jr., Seneca County Prosecuting Attorney, for appellee.

WALTERS, Judge.

{¶ 1} This case comes to us on remand from the Ohio Supreme Court. Defendant-appellant, Donald K. York appeals from the judgment of the Seneca County Common Pleas Court finding him guilty of aggravated burglary with a firearm specification, in violation of R.C. 2911.11(A)(2), and two counts of attempted aggravated murder with a firearm specification, in violation of R.C. 2923.02(A) and R.C. 2903.01(A).

{¶ 2} On appeal, York contends that the trial court erred in refusing to admit into evidence two letters that, while he was incarcerated pending the current

charges, he wrote to his dog, to support his plea of not guilty by reason of insanity. Since the fact that York had written letters to his dog was testified to by all of the experts in the case, and because the contents of the letters were not relevant, we cannot say that the trial court abused its discretion in its ruling. York further claims that the trial court erred in refusing to instruct the jury that the mere act of pointing a weapon at another, without more, is insufficient to constitute felonious assault in accord with *State v. Mills*[1] and *State v. Brooks*.[2] However, because there is sufficient evidence in the record of York's intent, including his own admission that he planned to kill both victims when he entered the house, the requested instruction would have been confusing and would not have been a proper statement of the law considering the evidence before the jury. Finally, York argues that his conviction was against the manifest weight of the evidence; however, upon review of the record, we do not find that the trier of fact clearly lost its way or that this presents an exceptional case where the evidence weighs heavily against conviction. Accordingly, we affirm the judgment of the trial court.

{¶ 3} On August 28, 2000, York broke into the home shared by his ex-wife, Mary Goodin, and her live-in boyfriend, Alan Beam. York pointed a .22 caliber rifle at the couple. Goodin called the police as Beam struggled to subdue York. During the struggle between the two men, York pulled the trigger on the rifle, firing one shot.

{¶ 4} The police arrived and arrested York. He was thereafter indicted on one count of aggravated burglary and two counts of attempted aggravated murder. Each count carried a firearm specification. At trial, York pled not guilty and not guilty by reason of insanity. He was ultimately tried before a jury and found guilty of all the charges. The trial court sentenced him to nine years on each of the three counts and three years on the merged firearm specification, all of which were to be served consecutively, for a total of 30 years in prison.

{¶ 5} York thereafter appealed the judgment of conviction, asserting four assignments of error. On appeal, this court addressed only the first assignment of error, which claimed that the trial court erred in allowing the jurors in the case to pose questions to the witnesses at trial. Therein, we found that while York failed to affirmatively demonstrate any resulting prejudice from the procedure employed, that the procedure was inherently prejudicial, and thus we reversed. Upon review, the Supreme Court reversed our decision on the authority of *State v. Fisher*,[3] where it held that allowing jurors to question witnesses is a matter

---

1. *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972.

2. *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636.

3. *State v. Fisher* (2003), 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222.

within the trial court's discretion, and it remanded the cause to this court for consideration of the remaining assignments of error.

## Assignment of Error II

"In an abuse of its discretion, the trial court reversibly erred to the prejudice of the defendant when said court denied the admission of evidence highly relevant to the defendant's not guilty by reason of insanity defense, to wit, the exhibits of the defendant's written correspondence to his dog."

{¶ 6} In this assignment of error, York claims that the trial court erred in refusing to admit his proffered evidence, exhibits G and H, which were letters he allegedly wrote to his dog. The contents of the letters consist primarily of cartoon caricatures of York, his ex-wife, and the dog, indicating that York was going to commit suicide. York identified the letters but could not state when they were written or sent; however, it is apparent from the context of the testimony that they were received by his ex-wife while he was incarcerated, and perhaps as late as April or May 2001.

{¶ 7} In offering the exhibits into evidence, York claimed that the letters were relevant to his insanity defense; however, the court, finding that there was no correlation between the time of the letters and the time of the offense, held that they were not relevant to a determination of his sanity at the time of the commission of the offenses on August 28, 2000.

{¶ 8} Initially, we note that the admission or exclusion of evidence rests within the sound discretion of the trial court and, absent an abuse of discretion, a trial court's decision on the matter will not be disturbed.[4] An abuse of discretion implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable.[5]

{¶ 9} "Evidence which is not relevant is not admissible."[6] Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[7] Herein, we have two documents, purportedly letters to York's dog, written after York had been incarcerated for some period of time. There is no evidence that these documents were written in close proximity in time to the offenses. Furthermore, while both psychologists

---

4. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph 2 of the syllabus; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126.

5. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

6. Evid.R. 402.

7. Evid.R. 401.

who testified as to York's sanity noted that they considered these letters among many other materials that were submitted to them, neither attached any apparent significance to the letters.

{¶ 10} Upon consideration of the record, we cannot find that the trial court abused its discretion in refusing to admit appellant's exhibits G and H, and therefore, appellant's second assignment of error is overruled.

### Assignment of Error III

"In an abuse of its discretion, the trial court reversibly erred by denying the defendant's motion for a jury instruction pertaining to the act of pointing a firearm, relevant to the indicted charges of attempted aggravated murder."

{¶ 11} In this assignment, York contends that the trial court erred in refusing to instruct the jury that "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of [attempted aggravated murder]." [8]

{¶ 12} The state argues that there was overwhelming evidence of York's intent in addition to the evidence of the pointing of the weapon at the victims and therefore the trial court's instructions were complete, and the proffered instruction was not appropriate.

{¶ 13} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." [9] Furthermore, in a criminal case, a trial court errs by failing to give a proposed jury instruction when (1) the instruction is relevant to the facts of the case, (2) the instruction gives a correct statement of the applicable law, and (3) the instruction in not covered in the general charge to the jury. [10]

{¶ 14} In order for the proposed jury instruction to have been proper herein, it would have been necessary that the only evidence before the jury was that York pointed the weapon at the victims and that there was no evidence of his intent. However, a review of the record indicates that the only allegation that York completely denied was that he had pointed the weapon at the victims. In addition to circumstantial evidence, the record is replete with direct evidence of his intent to kill the victims, all of which comes from York's own mouth.

---

8. *Brooks,* supra, syllabus; *Mills,* supra.

9. *State v. Comen* (1990), 50 Ohio St.3d 206, 210, 553 N.E.2d 640.

10. See *Mentor v. Hamercheck* (1996), 112 Ohio App.3d 291, 296, 678 N.E.2d 622.

{¶ 15} York himself testified that he had told the investigating police officers that he had intended to kill the victims. He also testified to having made numerous death threats to the victims prior to the incident, both by telephone and by mail. Additionally, no fewer than six police officers testified that York had told them that he had intended to kill the victims. Deputy Holmes testified that York had told him that when the rifle went off during the struggle, York had been trying to shoot Alan Beam in the head. Detective Boyer testified that York had told him that he took the safety off the rifle so he could shoot the "sons of bitches" and that he had decided that he was going to kill both of them. Based upon the evidence, the proposed jury instruction was not relevant to the facts of the case.

{¶ 16} Since the evidence did not warrant an instruction on the mere act of pointing a weapon with no other evidence of intent, the trial court did not err in failing to include it in its charge to the jury. Therefore, appellant's third assignment of error is overruled.

### Assignment of Error IV

■ "The jury's guilty verdicts, and the trial court's acceptance of same, were against the manifest weight of the evidence, thereby resulting in reversible error."

{¶ 17} In his final assignment of error, York argues that because the evidence establishes that he did not obstruct Mary Goodin when she left the room to call the police and because he did not shoot at the victims when he was able to, the guilty verdicts on the attempted aggravated-murder charges were against the manifest weight of the evidence. Furthermore, York argues that because Dr. Barnes testified that York had gone to the victims' residence in order to commit suicide, the guilty verdict on the aggravated burglary count was against the manifest weight of the evidence. The state argues that York is focused on only small portions of the evidence and that when considering all of the evidence, the jury clearly did not lose its way.

{¶ 18} We first set forth the standard by which a reviewing court measures a manifest-weight argument. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' "[11] In making its determination on this issue, "the appellate court * * * [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] *clearly lost its way*

---

11. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990), 1594.

*and created such a manifest miscarriage of justice that the conviction must be reversed* and a new trial ordered." [12] :Appellate courts are cautioned to sustain a manifest weight argument in exceptional cases only, i.e., where the evidence "weighs heavily against the conviction." [13]

{¶ 19} With regard to the convictions for attempted aggravated murder, the state is required to establish that the appellant knowingly did an act that constitutes a substantial step in a course of conduct that would culminate in his purposefully causing the death of another person, with prior calculation and design.[14]

{¶ 20} York's own testimony establishes that for a period of approximately ten weeks prior to August 28, 2000, he thought about and concocted various scenarios in which he would kill one or both of the victims in this case because of his extreme anger towards them and his belief that Alan Beam was responsible for alienating his ex-wife from him. York further testified that on August 28, 2000, he hired a taxicab to transport him, carrying a concealed .22 caliber rifle and at least 39 rounds of ammunition, to the residence of the victims. After arriving at the scene, York concealed himself in the backyard of the residence and loaded at least four shells into the weapon. Thereupon, he testified, he quietly entered the house through the unlocked back door and walked into the living room, where the victims were located, brandishing the loaded rifle. The victims both testified that York pointed the weapon at them, waving it back and forth; he denied that he pointed the weapon at either of them. The events thereafter are uncontroverted. Mary Goodin escaped the room, going past York, and almost simultaneously, Beam tackled him, attempting to subdue him and get the weapon away from him. While York and Beam were on the floor, York managed to fire the weapon once, in what he characterized to Deputy Holmes as an effort to shoot Beam in the head. The evidence further establishes that York told numerous law enforcement officers shortly after the events in question that he came to the home to kill both of the victims, that he was sorry that he had failed to accomplish his mission, and that he had engaged hit men to finish the job in the event that he was unsuccessful.

{¶ 21} With regard to the conviction for aggravated burglary, the state is required to prove that York trespassed in the home of Mary Goodin and Alan

---

12. Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

13. Id.

14. See R.C. 2903.01(A); R.C. 2923.02.

Beam, while they were present, entering by stealth and with the purpose to commit a felony therein.[15]

{¶ 22} The only evidence as to the aggravated burglary charge that would be required in addition to the evidence for the attempted aggravated murder would be the trespass by stealth. In that regard, York testified that he was "trespassing" in the residence; and while he denies that he "snuck" into the residence, he concedes that he quietly opened the back door to the residence, without knocking or otherwise announcing his entry.

{¶ 23} The only evidence that would indicate his abandonment of the scheme to kill the victims and would obviate the aggravated burglary element of "purpose to commit a felony therein," was York's self-serving trial testimony, which was reiterated through his psychologist, Dr. Barnes, that he only intended to commit suicide inside the residence, in front of the victims. We cannot say that this contrary evidence weighs heavily against conviction.

{¶ 24} The record herein does not support a reversal on the basis of manifest weight of the evidence. We cannot say that the trier of fact clearly lost its way in resolving the conflicts in the testimony in favor of the state or created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 25} Therefore the conviction is not contrary to the manifest weight of the evidence, and appellant's fourth assignment of error is hereby overruled.

{¶ 26} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Seneca County Common Pleas Court is hereby affirmed.

Judgment affirmed.

THOMAS F. BRYANT, P.J., and SHAW, J., concur.

---

15. See R.C. 2911.11.